UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| AQUATEX INDUSTRIES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 3:02-0914 |
| v. ) | JUDGE ECHOLS |
| ) | |
| TECHNICHE SOLUTIONS, ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM

This case is on remand for further proceedings after the Federal Circuit affirmed in part and reversed in part this Court's prior Memorandum and Order granting Defendant's Motion for Summary Judgment (Docket Entry No. 43) and denying Plaintiff's Cross-Motion for Partial Summary Judgment Re Patent Infringement Liability (Docket Entry No. 47). Aquatex Indus., Inc. v. Techniche Solutions, 419 F.3d 1374 (Fed. Cir. 2005). This Court previously held in part that Defendant is not liable for contributory infringement because its products do not literally infringe Plaintiff's U.S. Patent No. 6,371,977 ("the '977 patent"), and the Federal Circuit affirmed that holding. Id. at 1382.

The issue the Court must now decide is whether Defendant's evaporative cooling garments and products infringe Plaintiff's '977 patent through application of the doctrine of equivalents.[1] The

---

[1] "Under this doctrine, a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." Graver Tank & Mfg. Co. v. Linde Air Prods. Co., 339 U.S. 605, 609 (1950).

parties submitted additional briefs on this issue at the Court's request.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff AquaTex Industries, Inc. is the assignee of the '977 patent, entitled "Protective Multi-Layered Liquid Retaining Composite," issued on April 16, 2002, by the United States Patent and Trademark Office. The '977 patent is a continuation in part of previous applications that resulted in Patent No. 5,885,912, issued March 23, 1999.

Plaintiff, an Alabama corporation, initiated the present action under 35 U.S.C. § 271(c) against Defendant TechNiche Solutions, a California corporation, alleging contributory infringement of the '977 patent. Plaintiff seeks permanent injunctive relief, compensatory and treble damages, attorney's fees, and pre- and post-judgment interest to remedy Defendant's alleged contributory infringement. Defendant denies the infringement allegation and seeks judgment in its favor, along with an award of attorney's fees.

Plaintiff's '977 patent claims a method of cooling a person through evaporation by providing a multi-layered, liquid-retaining composite material. Plaintiff's product is known as "Hydroweave." The '977 patent describes the invention in general terms as including:

> a basic configuration of a multi-layered, liquid-retaining composite material compris[ed] of:
>
> a conductive layer which is adapted for placement in close proximity to, or indirect contact with the body of the wearer;

> a filler layer impregnated [with] a fiberfill batting material and with liquid absorbent particles, fibers, or a combination of both;
>
> a retainer layer for retention of the filler layer between the conductive layer and the retention layer; and, if needed,
>
> an outside protective layer attached to, or placed adjacent to, the outermost surface of the retention layer.

(Docket Entry No. 38, Ex. B, '977 Patent at col. 3, lines 31-44.) Further, the specification states:

> With respect to the liquid absorbent fibers, the blend is a combination of a superabsorbent polymeric fiber and a fiberfill or batting. The particular fiberfill is not known to be critical. That is, any commercial fiberfill may be used as long as it does not adversely affect the performance of the end composite.

(Id. at col. 3, lines 45-50.) The commercial fiberfill examples described in the specification are all synthetic materials, and the three United States patents incorporated into the '977 patent by reference each discloses and teaches the use of synthetic polyester fiberfill or synthetic polyester fiberfill blends.

Defendant TechNiche uses a material called Vizorb®, manufactured by Buckeye Technologies, in the absorbent layer of its competing product. Vizorb® is an airlaid non-woven fabric predominantly made of cellulose fluffed pulp, but incorporating both natural and synthetic fibers. (Docket Entry No. 46, Grosvenor Depo. at 23, 45; Docket Entry No. 52, Exs. 12 & 14.) Vizorb® is manufactured from wood cellulose, superabsorbent polymer, bicomponent fiber, cellulose based carrier sheet, and a chemical binder. (Docket Entry No. 52, Tab 13.) It is not a tangled web of long fibers, as is synthetic "fiberfill". (Grosvenor Depo. at 45.) Ordinarily, a Vizorb® fiber is very short, approximately

3 millimeters in length, with the longest fiber approximately 6 millimeters in length. The product is glued together. (Id. at 36, 45.) Vizorb® is typically used in feminine hygiene products, baby diapers, and adult incontinence products. (Id. at 34.) It is not usually used to stuff furniture, pillows, or sleeping bags, and it is not considered batting material. (Id. at 35.)

The Court previously agreed with Defendant that Vizorb® does not constitute "fiberfill" as the term is used in Plaintiff's '977 patent. Therefore, the Court held that Defendant's product did not literally infringe Plaintiff's product, and granted summary judgment in Defendant's favor. The Federal Circuit affirmed that holding. Aquatex Indus., Inc., 419 F.3d at 1384.

Now at issue is whether Defendant's use of Vizorb® in the absorbent layer of its garments infringes the '977 patent through the doctrine of equivalents. Claims 1 and 9 are at issue.

Claim 1 reads:

1. A method of cooling a person by evaporation, comprising:

providing a multi-layered, liquid-retaining composite material comprising a fiberfill batting material, and hydrophilic[2] polymeric[3] fibers that absorb at least about 2.5 times the fiber's weight in water;

soaking said multi-layered composite in a liquid;

employing said multi-layered, liquid-retaining composite material as a garment or a flat sheet and evaporatively cooling said person.

(Id. at col. 13, lines 64-67 & col. 14 lines 1-6.)

---

[2] "Hydrophilic" means water-absorbent. "Hydrophobic" means water-resistant.

[3] "Polymeric" refers to chemically manufactured particles, i.e., plastics.

Claim 9 reads:

9. A method of cooling a person by evaporation, comprising:

providing a multi-layered, liquid-retaining, composite material comprising:

a filler layer comprising:

a fiberfill batting material and hydrophilic polymeric particles;

soaking said multi-layered, liquid-retaining composite in a liquid; and

employing said multi-layered, liquid-retaining composite as a garment or a flat sheet and evaporatively cooling said person.

(Id. at col. 14, lines 34-46.) The difference between these claims is that in Claim 1, the hydrophilic polymer occurs in fiber form. In Claim 9, the hydrophilic polymer is introduced into the material as a particle.

During prosecution of the '977 patent, the patent examiner initially rejected Plaintiff's Claims 1 and 9[4] as already described or "anticipated" by Zafiroglu, U.S. Patent No. 4,897,297 ("the '297 patent"). (Docket Entry No. 46 at 225; Docket Entry No. 53, Tab A.) The patent examiner observed:

> As to claims 31 and 43, Zafiroglu discloses a method of cooling a person, comprising:
>
> providing multi-layered, liquid-retaining composite material comprising a fiberfill batting material (mixture of synthetic polymer pulp or wood pulp, which is a fiber) and hydrophilic polymeric fibers or particles that absorb at least 2.5 times the fiber's or particle's weight (15-35 times); soaking the multi-layered, liquid-retaining composite material in a liquid (water); and employing the

---

[4]Claim 1 was previously numbered Claim 31 and Claim 9 was previously numbered Claim 43. (Docket Entry No. 46 at 173-185 & 212-222.)

same as a flat sheet (compress or the basis of a material to form an article such as a pillow, tube, quilt or the like[.]

(Docket Entry No. 46 at 225.)

Plaintiff responded to the patent examiner's rejection in an "Amendment and Response Under 37 C.F.R. § 1.111." (Docket Entry No. 46 at 238-249.) Plaintiff noted differences between its invention and the Zafirogou '297 patent:

> The '297 Patent discloses a compress that is made from an elastic fabric and comprises a hydrogel-forming polymeric material. The absorbent polymer filler material may be particulate, and may be accompanied by a diluent filling material.
>
> However, the '297 Patent fails to disclose or suggest the fiberfill batting and polymeric fibers and/or particles of the composite material in the claimed method. Additionally, the '297 Patent fails to disclose or suggest the evaporative cooling method of the present invention. . . . As noted in the Examples (at col. 6), the articles of '297 showed no evaporation after one hour, or insignificant evaporation after 8 hours. Furthermore, the samples are placed in a hot-air oven for 12 hours for drying to return the samples to their original weight.

(Docket Entry No. 46 at 245.)

Plaintiff amended Claim 1 to specify "[a] method of cooling a person <u>by evaporation</u>[,]" and amended Claim 9 to specify "employing said multi-layered, liquid-retaining composite material as a garment or a flat sheet <u>and evaporatively cooling said person.</u>" (Docket Entry No. 46 at 249 (emphasis added).) The patent examiner withdrew the rejection and the '977 patent issued. (Docket Entry No. 46 at 255-256.)

## II. STANDARD OF REVIEW UNDER RULE 56

In ruling on a motion for summary judgment, this Court must construe the evidence produced in the light most favorable to the

non-moving party, drawing all justifiable inferences in his or her favor. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986). A party may obtain summary judgment if the evidentiary material on file shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>Prima Tek II, L.L.C. v. Polypap, S.A.R.L.</u>, 318 F.3d 1143, 1147 (Fed.Cir. 2003). The moving party bears the burden of satisfying the court that the standards of Rule 56 have been met. <u>Martin v. Kelley</u>, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question to be addressed is whether there exists any genuine issue of material fact which is disputed. <u>Anderson</u>, 477 U.S. at 248. If so, summary judgment dismissal is inappropriate.

To defeat a properly supported motion for summary judgment, an adverse party "must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56(e). The non-moving party's burden of providing specific facts demonstrating that there remains a genuine issue for trial is triggered once the moving party "show[s] – that is, point[s] out to the district court – that there is an absence of evidence to support the nonmoving party's case." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986).

### III. ANALYSIS

**A. Applicable Law**

The doctrine of equivalents allows a patentee to claim insubstantial alterations that were not captured in drafting the

original patent claim, but which could be created through trivial changes in a competing product. Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki, 535 U.S. 722, 733-734 (2002). "Consideration must be given to the purpose for which an ingredient is used in a patent, the qualities it has when combined with the other ingredients, and the function which it is intended to perform." Graver Tank & Mfg. Co., 339 U.S. at 609. "[W]hether persons reasonably skilled in the art would have known of the interchangeability of an ingredient not contained in the patent with one that was" is an important factor in applying the doctrine. Id.

Each element contained in a patent claim is deemed to be material, and the doctrine of equivalents must be applied to each individual element of the claim, not to the invention as a whole. Warner-Jenkinson Co. v. Hilton Davis Chemical Co., 520 U.S. 17, 29 (1997). To find infringement under the doctrine of equivalents, the accused product must contain each limitation of the claim in the patented invention or its equivalent. Id. at 40. "An element in the accused product is equivalent to a claim limitation if the differences between the two are insubstantial. The analysis focuses on whether the element in the accused device 'performs substantially the same function in substantially the same way to obtain the same result' as the claim limitation." Aquatex Indus., Inc., 419 F.3d at 1382 (citing Graver Tank & Mfg. Co., 339 U.S. at 608). Infringement under the doctrine of equivalents is a question of fact. K-2 Corp. v. Salomon S.A., 191 F.3d 1356, 1366 (Fed. Cir. 1999).

Prosecution history estoppel can limit the application of the doctrine of equivalents if the patentee made a narrowing amendment to comply with the Patent Act for purposes of obtaining the patent, or if the patentee clearly and unmistakably relinquished subject matter, either by amendment or by argument, made to the patent examiner to avoid the prior art. Festo Corp., 535 U.S. at 730; Aquatex Indus., Inc., 419 F.3d at 1382. The prosecution history thus estops the patentee "from later arguing that the subject matter covered by the original, broader claim was nothing more than an equivalent." Festo Corp., 535 U.S. at 727. Competitors may then rely on the estoppel so that their own products will not be found to infringe by equivalence. Id. Thus, the patentee may not later resurrect surrendered subject matter by contending in an infringement action that the accused product, arguably covered by the relinquished subject matter, should be deemed equivalent to the literal claims of the patent. Id. at 733-737; Wang Lab., Inc. v. Mitsubishi Elec. America, Inc., 103 F.3d 1571, 1577 (Fed. Cir. 1997).

Whether prosecution history estoppel applies is a question of law. Wang Lab., Inc., 103 F.3d at 1578. The Court must examine the statements and actions of the patentee before the patent examiner during prosecution, and the Court must ask what a competitor reasonably may conclude the patentee surrendered to gain issuance of the patent. Id. "Arguments and amendments made to secure allowance of a claim, especially those distinguishing prior art, presumably give rise to prosecution history estoppel." Id.

The patentee bears the burden to show that an amendment was not for purposes of patentability or that an amendment did not surrender the particular equivalent in question. Festo Corp., 535 U.S. at 737-740. The patentee, as the author of claim language, is expected to draft claims encompassing readily known equivalents. Id. at 740.

**B. Application of Law to Facts**

The Court now turns to an element-by-element examination of Claims 1 and 9 of the '977 patent. Although in its supplemental brief Plaintiff now appears to rest its infringement action only on Claim 9, (Docket Entry No. 77 at 7, 9-11), in the interest of completeness, the Court will consider Claims 1 and 9.

**Claim 1 - First Method Step:** "providing a multi-layered, liquid-retaining composite material comprising a fiberfill batting material, and hydrophilic polymeric fibers that absorb at least about 2.5 times the fiber's weight in water";

**Claim 9 - First Method Step:** "providing a multi-layered, liquid-retaining, composite material comprising: a filler layer comprising: a fiberfill batting material and hydrophilic polymeric particles[.]"

*Element 1:* "*providing a multi-layered, liquid-retaining composite material*"

Defendant TechNiche admits for purposes of summary judgment that its products constitute a multi-layered, liquid-retaining composite material.

*Element 2:* "*a fiberfill batting material*" or "*a filler layer comprising: a fiberfill batting material*"

It is the law of the case that the filler layer in Defendant TechNiche's product does not include "fiberfill batting material." Aquatex Indus., Inc., 419 F.3d at 1380-1382. Thus, the question is whether the filler layer of Defendant's accused product performs substantially the same function in substantially the same way to obtain the same result as the filler layer of Plaintiff's product. Id. at 1382 (citing Graver Tank & Mfg. Co., 339 U.S. at 608); SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., 242 F.3d 1337, (Fed. Cir. 2001) (noting district court may read claims in view of the specification of which they are a part).

Plaintiff's invention "provides a combination of fiberfill batting material and superabsorbent hydrophilic polymeric particles, fibers, or blends thereof." ('977 patent, col. 1, lines 59-61.) The patent explains that "this invention further relates to methods of using the fibrous combination and composite to heat or cool a human." (Col. 1, line 67 - col. 2, lines 1-2 (emphasis added).) The specification repeatedly refers to "the blend" of materials in the filler layer, and states, "[w]ith respect to the liquid absorbent fibers, the blend is a combination of a superabsorbent polymeric fiber and fiberfill batting." (Col. 3, lines 45-47 (emphasis added).) The specification states "[p]referably, the hydrophilic polymeric fiber is blended with the fiberfill in a range of from about 15% to 75% with the fiberfill. The blend may be varied depending on the end use of the composite." (Col. 6, lines 20-23 (emphasis added.) Further, the specification provides:

> One of the advantages of the combination of the hydrophilic polymers and the fiberfill material is that

> the blend promotes evaporation qualities and provides a
> means to hold cool or hot. That is, the blend retains
> coolness or warmth when chilled or heated. Hydrophilic
> blends of the present invention allow certain composites
> to be microwaved or refrigerated. In such a use, the
> batting helps act as an insulator to help maintain the
> desired temperature.

(Col. 6, lines 33-40 (emphasis added).) In describing the various embodiments of the invention, the '977 patent clearly indicates the filler layer includes both fiberfill batting <u>and</u> hydrophilic fibers or particles distributed or blended through the fiberfill. (Col. 8, line 39 - col. 13, line 62.)

Although the patent specification does not describe in detail the function of the fiberfill batting material, there is little question upon reading the specification that the water-resistant fiberfill promotes evaporation of liquid from the interspersed hydrophilic fibers or particles. Information taken from Plaintiff's website confirms this:[5]

> The hydrophobic fill evenly distributes and surrounds the
> charged fibers with air, creating an ideal environment
> for evaporation. When moisture in the batting evaporates,
> heat is removed, cooling the surrounding area while the
> conductive lining transfers cooling to the wearer. . . .
>
> Because of the even distribution of water-absorbent
> polymer throughout Hydroweave's batting, cooling is
> provided evenly throughout the entire garment and can
> continue to cool for up to eight hours depending on the
> degree of garment contact, environmental conditions,
> wearer physical activity, and type of outer clothing
> worn.

---

[5]The Court relies only on material which was originally included in the summary judgment record. In requesting supplemental briefs, the Court did not provide for any expansion of the factual record. Thus, the Court does not rely on additional pages copied from Plaintiff's website and attached to the Declaration of W. Edward Ramage, which was submitted with Defendant's supplemental brief. (Docket Entry No. 79.)

(Docket Entry No. 43, Ex. B.) Thus, as suggested in the '977 patent, the function of the hydrophobic fiberfill batting material in Plaintiff's product is to separate and surround the hydrophilic fibers or particles with even air spaces into which liquid can evaporate, providing cooling by evaporation for up to eight hours.

Defendant's products also cool by evaporation, but in a different way. Defendant's garments "are made with a unique Polymer Embedded Fabric (PEF). When dipped in water for 1-3 minutes, the PEF absorbs water and stores it inside powerful polymer crystals. The encapsulated water then evaporates slowly (8-12 hours) creating an extended cooling effect. (Docket Entry No. 52, Ex. 4, at 1.)

The polymer embedded fabric that Defendant places in its filler layer is Visorb®, which typically is used in baby diapers, feminine hygiene products, and adult incontinence products to retain liquid. Visorb® is an airlaid, non-woven fabric predominantly made of cellulose fluffed pulp, which incorporates both natural and synthetic fibers. Visorb® is manufactured from wood cellulose, superabsorbent polymer, bicomponent fiber, cellulose-based carrier sheet, and a chemical binder. These components are glued together.[6] The product absorbs and holds

---

[6]A representative of Visorb®'s manufacturer, Buckeye Technologies, testified that the superabsorbent component of Visorb® is referred to as a powder and not a hydrophilic particle, fiber or crystal. (Docket Entry No. 78, Memorandum at 9; Grosvenor Depo. at 37.) Defendant's own marketing materials, however, refer to the superabsorbent as "powerful polymer crystals." Further, Defendant's President, Douglas R. Frost, testified that TechNiche's product contained "hydrophilic particles." (Docket Entry No. 52,

water, which then evaporates slowly over time. Plaintiff, which carries the burden to prove infringement, has not produced evidence to show that Defendant's filler layer includes a hydrophobic material, like the fiberfill used in Plaintiff's product, to create air pockets to promote evaporation. See <u>SciMed Life Sys., Inc.</u>, 242 F.3d at 1346 (observing familiar principle that doctrine of equivalents cannot be employed in manner that wholly vitiates a claim limitation).

Furthermore, during prosecution of the '977 patent, the patent examiner initially rejected Plaintiff's Claims 1 and 9 as already described or anticipated by the Zafiroglu '297 patent. Plaintiff responded to the patent examiner's rejection with an "Amendment and Response Under 37 C.F.R. § 1.111." (Docket Entry No. 46 at 238-249.) Plaintiff distinguished its invention from the '297 patent in two ways.

First, Plaintiff pointed out that the '297 patent disclosed a wet compress made from an elastic fabric and comprising a hydrogel-forming polymeric material. Plaintiff argued that the '297 patent failed to disclose or suggest the fiberfill batting and polymeric fibers or particles of the composite material in Plaintiff's claimed method. In so doing, Plaintiff essentially distinguished Defendant's product, which also does not disclose or suggest the combination of fiberfill batting and polymeric fibers or particles in the composite material of Plaintiff's claimed method of cooling by evaporation.

---

Ex. 18, Frost Depo. at 297.)

Second, Plaintiff distinguished the '297 patent because it failed to disclose or suggest the evaporative cooling method of Plaintiff's invention. The specification of the Zafiroglu '297 patent disclosed that

> the hydrogel formed when water enters the article of manufacture of the invention is substantially contained within the device and does not leak out easily. Some water can evaporate slowly from the article during use. However, the article may then be rewetted to assure that the full capacity of the filling to absorb water is employed, or if desired totally dried and re-used at a later time.

(Docket Entry No. 43, Ex. A, col. 4 at lines 19-26.) Plaintiff explained: "As noted in the Examples (at col. 6), the articles of '297 showed no evaporation after one hour, or insignificant evaporation after 8 hours. Furthermore, the samples are placed in a hot-air oven for 12 hours for drying to return the samples to their original weight." (Docket Entry No. 46 at 245.)

In contrast, Plaintiff emphasized the method it sought to patent was cooling by evaporation of liquid, rather than cooling through a compress showing insignificant evaporation over time as disclosed in the '297 patent. To crystalize this distinction, Plaintiff amended Claim 1 to specify "[a] method of cooling a person <u>by evaporation</u>[,]" and amended Claim 9 to specify "employing said multi-layered, liquid-retaining composite material as a garment or a flat sheet <u>and evaporatively cooling said person.</u>" (Docket Entry No. 46 at 249 (emphasis added).) In light of these narrowing amendments, the patent examiner withdrew the initial rejection and the '977 patent issued.

Defendant's product is more similar to the compress disclosed in the '297 patent than the method of cooling by evaporation

disclosed in Plaintiff's '977 patent. Defendant points out that its products "undoubtedly have ancillary evaporation from the other layers of the garment, as opposed to the filler layer which is the subject of the patent claims. But any garment containing the prior art material of Zafiroglu, instead of Visorb®, would exhibit the same incidental evaporation." (Docket Entry No. 78, Memorandum at 13 n.4.) "Cooling by evaporation from a wet garment or cloth is well known, of course, and has been used by human beings as a cooling mechanism for centuries." (Id.)

Plaintiff suggests there is no real difference between the filler layers of Plaintiff's and Defendant's products because the '977 patent makes clear the nature of the "particular <u>fiberfill</u> is not known to be critical. That is, any commercial <u>fiberfill</u> may be used as long as it does not adversely affect the performance of the end composite." (Docket Entry No. 38, Ex. B, '977 Patent at col. 3, lines 45-50 (emphasis added).) But it was previously determined that Visorb®, used in Defendant's filler layer, is not "fiberfill." <u>Aquatex Indus., Inc.</u>, 419 F.3d at 1382.

Further, the Supreme Court has instructed that this Court must give consideration to the purpose for which <u>an ingredient</u> is used in a patent, the qualities that ingredient has when combined with the other ingredients, and the function which it is intended to perform. <u>See</u> <u>Graver Tank & Mfg. Co.</u>, 339 U.S. at 609. Consequently, the Court must evaluate the function of each ingredient in Plaintiff's filler layer, as well as the quality of each ingredient when combined with the other ingredient, and the function each is intended to perform. The Court must also consider

as an important factor "whether persons reasonably skilled in the art would have known of the interchangeability of an ingredient not contained in the patent with one that was[.]" Id. (emphasis added). As the Court previously explained, the single ingredient of Visorb® utilized in Defendant's filler layer does not function in substantially the same way as the dual ingredients of fiberfill infused with hydrophilic fibers or particles used in Plaintiff's product.

For these reasons, Plaintiff has not carried its burden to prove that Defendant's filler layer performs substantially the same function in substantially the same way as Plaintiff's. See Aquatex Indus., Inc., 419 F.3d at 1382. Moreover, because Plaintiff made narrowing amendments to Claims 1 and 9 to obtain the '977 patent, and because those narrowing amendments operated to exclude the Zafiroglu '297 patent and Defendant's like product, a presumption of prosecution history estoppel by amendment arises which Plaintiff has not overcome. See Festo Corp., 535 U.S. at 737-740. A competitor like Defendant could reasonably conclude from the prosecution history of the '977 patent that Plaintiff proposed the narrowing amendments to surrender subject matter within which Defendant's product falls. See Wang, 103 F.3d at 1578. Thus, Plaintiff may not rely on the doctrine of equivalents to prove patent infringement.

*Element 3:* "*hydrophilic polymeric fibers that absorb at least about 2.5 times the fiber's weight in water*" or "*hydrophilic polymeric particles*"

As explained above with regard to Element 2, Visorb® is not a hydrophilic polymeric fiber, but it may be considered a hydrophilic polymeric particle. The hydrophilic particles used in Defendant's product perform substantially the same function to absorb liquid as the hydrophilic fibers or particles used in Plaintiff's invention.

**Claim 1 - Second Method Step**: "soaking said multi-layered composite in a liquid";

**Claim 9 - Second Method Step:** soaking said multi-layered, liquid-retaining composite in a liquid[.]"

Defendant TechNiche admits for purposes of summary judgment that its multi-layered garments are soaked in a liquid.

**Claim 1 - Third Method Step**: "employing said multi-layered, liquid-retaining composite material as a garment or a flat sheet and evaporatively cooling said person."

**Claim 9 - Third Method Step:** "employing said multi-layered, liquid-retaining composite as a garment or a flat sheet and evaporatively cooling said person."

*Element 1:* "employing said multi-layered, liquid-retaining composite material as a garment or a flat sheet" or "employing said multi-layered, liquid-retaining composite as a garment or a flat sheet"

For purposes of summary judgment, Defendant TechNiche admits that its products are employed as multi-layered garments with a liquid-retaining composite or composite material.

*Element 2: "evaporatively cooling said person."*

As previously explained, Plaintiff's product uses two ingredients in the filler layer, fiberfill and hydrophilic fibers

or particles, to promote cooling by evaporation of liquid. Defendant's garments, when soaked, absorb the liquid into the single ingredient Visorb® filler layer. Because Defendant's filler layer does not include fiberfill to create air spaces for the promotion of rapid evaporation, only ancillary evaporation through the outer layers of the garment occurs over a long stretch of time, just as evaporation of liquid from the wet compress described in the Zafiroglu '297 patent would occur over a long period of time. In view of the prior art, particularly the '297 patent, a person reasonably skilled in the art would not necessarily realize the interchangeability of one ingredient, Visorb®, for two ingredients, fiberfill and hydrophilic fibers or particles, in the filler layer of a garment to achieve evaporative cooling. See Graver Tank & Mfg. Co., 339 U.S. at 609. Thus, Plaintiff has not met its burden to prove patent infringement through the doctrine of equivalents.

## IV. REQUEST FOR ATTORNEY'S FEES

The Court again finds this is not an "exceptional" case warranting an award of attorney's fees to the prevailing party under 35 U.S.C. § 285. See Dow Chemical Co. v. Exxon Corp., 139 F.3d 1470, 1479 (Fed. Cir. 1998). There is not clear and convincing evidence that the case is "exceptional" as contemplated by the statute and the case law. Cf. Interspiro USA, Inc. v. Figgie Int'l, Inc., 18 F.3d 927, 933-934 (Fed. Cir. 1994). The Court finds that neither party litigated unfairly, vexatiously, or in bad faith, and thus, an award of attorney's fees is not necessary to prevent "gross injustice." See Sun-Tek Indus., Inc. v. Kennedy Sky Lites, Inc., 929 F.2d 676, 679 (Fed.Cir. 1991).

Therefore, each side will bear its own attorney's fees and expenses.

## V. CONCLUSION

Defendant's use of Visorb® in the filler layer of its product does not perform substantially the same function in substantially the same way to obtain the same result as the filler layer of Plaintiff's product. Thus, the doctrine of equivalents cannot be used to prove patent infringement. Further, for the reasons stated, Plaintiff is barred by prosecution history estoppel by amendment from now contending that Defendant's accused product infringes through the doctrine of equivalents.

Because there are no genuine issues of material fact for trial, the Court will grant Defendant's motion for summary judgment and deny Plaintiff's cross-motion for partial summary judgment.

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE